IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ADMIRAL INSURANCE COMPANY,

        Plaintiff,

v.                                                Civil Action No. 3:12cv601-JAG

HENRY L. MARSH, FREDERICK H. MARSH,
HILL, TUCKER & MARSH, P.L.L.C., and
ALZENA MAYFIELD

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on cross motions for summary judgment filed by Admiral Insurance Company ("Admiral") (Dk. No. 47) and Henry, L. Marsh, Fredrick H. Marsh, and Hill, Tucker & Marsh, PLLC (collectively "the Marsh defendants") (Dk. No. 49). Additionally, the Marsh defendants filed a motion to stay the Court's determination of the duty to indemnify. (Dk. No. 52.)

Admiral seeks a declaratory judgment from this Court on its duty to defend the Marsh defendants in a legal malpractice lawsuit. Alzena Mayfield sued the Marsh defendants in state court (the "Mayfield complaint") for malpractice based on the Marsh defendants' handling of a defamation action against her.

Admiral seeks a declaration that it does not owe a duty to defend the Marsh defendants because the Mayfield complaint falls within one of the insurance policy exclusions. Admiral argues that the following exclusions relieve Admiral of its duty to defend: Count I–Admiral owes no coverage under the 2007 – 2008 policy due to a lack of written notice; Count II–Admiral

owes no coverage under the Past Acts Exclusion of the 2010 – 2011 Policy; Count III–Admiral owes no coverage under the 2010 – 2011 Policy because the Marsh defendants' acts fall outside the policy's coverage; and Count V–Admiral owes no coverage under the 2010 – 2011 Policy for the unauthorized settlement. The Court GRANTS in part and DENIES in part Admiral's motion for summary judgment. The Court GRANTS the motion as to Count I, but DENIES the motion as to Counts II, III, and V.[1]

The Marsh defendants also seek summary judgment from the Court in the form of a declaration that Admiral owes a duty to defend the Marsh defendants against the Mayfield suit. The Court GRANTS the Marsh defendants' motion for summary judgment. The Court DENIES as MOOT the Marsh defendants' motion to stay the Court's determination of Admiral's duty to indemnify.

Thus, the Court finds that Admiral owes the Marsh defendants a duty to defend the state malpractice action. The state court dismissed with prejudice the Mayfield complaint on May 21, 2013. The state court found the Mayfield complaint barred by the applicable statute of limitations. Nonetheless, this Court has still issued its opinion on the duty to defend in the event that Mayfield appeals.[2]

## I. Facts

Admiral provided professional liability coverage to the Marsh defendants from July 3,

---

[1] Count IV deals with Exclusion K. Admiral has apparently abandoned this claim. Thus, as discussed in section III(C)(4), the Court GRANTS summary judgment to the Marsh defendants on Count IV. Count VI asks for a declaratory judgment from the Court that Mayfield's complaint only consists of one "claim" under the terms of the policy. Admiral has not moved for summary judgment on this count, but Admiral states, in its motion for summary judgment, that the Mayfield complaint only sues the Marsh defendants for one malpractice action—the defamation representation—and thus only one "claim" remains at issue. The Marsh defendants do not dispute this conclusion. Accordingly, the Court DISMISSES Count VI as MOOT.

[2] Given the outcome of the state court suit against the Marsh defendants, any issues raised in this case dealing with the duty to indemnify are not ripe for decision and will be DISMISSED.

2006, through July 3, 2011. Sometime prior to August 2006, Mayfield alleges that she and the Marsh defendants had a meeting at Mayfield's home. Henry Marsh allegedly admitted to Mayfield that he and his law firm violated duties owed to Mayfield when they represented her in three prior legal matters. To settle Mayfield's complaint against them:

> Mr. Marsh offered to handle any and all litigation against [Mayfield] and/or her son without charge for one year provided [Mayfield] agreed to accept this offer as full compensation in exchange for [Mayfield] and her son agreeing not to pursue any right or remedy they might have against [the Marsh defendants].

(Mayfield's Am. Comp. ¶ 10, Dk. No. 23-3.) Mayfield accepted the offer and asked the Marsh defendants to defend her in a defamation lawsuit.

The Marsh defendants defended Mayfield in the defamation action from August 2006 through April 2007. Again, they allegedly committed malpractice. The jury in the defamation action returned a $250,000 verdict against Mayfield. Mayfield sued the Marsh defendants for breach of contract and malpractice in handling the defamation case.

In September and October of 2010, the Virginia State Bar found that Fredrick Marsh and Henry Marsh had committed professional misconduct based on the facts alleged above.

## II. Standard of Review

Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period for discovery, Rule 56(c) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*).

3

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks & emphasis omitted). When a court faces cross motions for summary judgment, as it does here, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted).

"Resolution of the instant matter through a grant of summary judgment is 'especially appropriate . . . because the construction of insurance contracts is a legal question well suited for resolution by the court.'" *W. Am. Ins. Co. v. Johns Bros., Inc.*, 435 F. Supp. 2d 511, 513-14 (E.D. Va. 2006) (quoting *Clark v. Metropolitan Life Ins. Co.*, 369 F.Supp.2d 770, 774 (E.D. Va. 2005)).

### III. <u>Analysis</u>

*A. Duty to Defend*

In Virginia, "the duty to defend 'arises whenever the complaint [against the insured] alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007) (quoting *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 268, 475 S.E.2d 264, 265 (1996)). "[T]he burden rests on the insurer to establish the clear applicability of a particular exclusion from coverage." *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995) (citing *Johnson v. Ins. Co. of N. Am.*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986)).

In order to determine whether allegations in an underlying lawsuit fall within the scope of the insurance policy's terms, Virginia applies the "Eight Corners Rule." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009). The Eight Corners Rule requires courts "'to compare the four corners of the insurance policy against the four corners of the underlying complaint [to determine] if any allegations may potentially be covered by the [exclusions in the] policy.'" *Id.* (quoting *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 567 F. Supp. 2d 824, 829 (E.D. Va. 2008)) (second alteration added).

The Supreme Court of Virginia has repeatedly stated that "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 683, 692 S.E.2d 220, 224 (2010) (citing *Brenner v. Lawyers Title Ins. Corps.*, 240 Va. 185, 189, 192, 397 S.E.2d 100, 102, 104 (1990); *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); *London Guar. & Accident Co., v. C.B. White & Bros., Inc.*, 188 Va. 195, 199-200, 49 Se.E2d 254, 256 (1948)).

"[W]here it appears clear that the insurer would not be liable under the policy for any judgment based on the allegations in the underlying complaint, [the insurer] has no duty . . . to defend." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F.Supp.2d 422, 426 (E.D. Va. 2000). The duty to defend imposes a broader duty than the duty to indemnify. Thus, "if there is no duty to defend . . . there [also] can be no duty to indemnify." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 427 (E.D. Va. 2000).

The insurer bears the burden to establish the clear applicability of a particular exclusion from coverage. *Fuisz*, 61 F.3d at 242. "[B]ecause insurers almost invariably author the policies

they issue, ambiguous language in those policies is construed in favor of an insured. Thus, if there is any ambiguity regarding potential coverage, the insurer must provide a defense." *Id.*

"An ambiguity, if one exists, must be found on the face of the policy." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 233, 415 S.E.2d 131, 134 (1992). "[L]anguage is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Id.* "[C]ontractual provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel WIP Lease Corp. v. Saunders*, 276 Va. 509, 516, 666 S.E.2d 317, 321 (2008) (citing *Dominion Sav. Bank, FSB v. Costello*, 257 Va. 413, 416, 512 S.E.2d 564, 566 (1999)).

"Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Seals v. Erie Ins. Exchange*, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009). If "the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Evanston Ins. Co., v. Harbor Walk Dev., LLC*, 814 F. Supp. 2d 635, 643 (E.D. Va. 2011). When an insurer leaves words undefined in an insurance policy, "as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *CACI Int'l, Inc.*, 566 F.3d at 158 (quoting *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 263 Va. 52, 56, 556 S.E.2d 758, 160 (2002). A court may also interpret the words in a policy by considering the word's meaning in the context of the policy as a whole. *Id.*

*B. 2007 – 2008 Policy*

In Count I of its Amended Complaint, Admiral seeks a declaration of its obligations to the Marsh defendants under the 2007 – 2008 Policy. Admiral asserts that the Marsh defendants did not provide written notice of Mayfield's claim during the 2007 – 2008 policy period, as

6

required by the policy, and thus coverage does not exist under the 2007 – 2008 Policy. The Marsh defendants do not dispute this. Thus, the Court grants summary judgment to Admiral on Count I, which leaves only the 2010 – 2011 policy period at issue.

*C. 2010 – 2011 Policy*

Admiral asserts four grounds why it believes that no duty to defend exists under the 2010 – 2011 Policy: (1) the Past Acts Exclusion applies, (2) the Marsh defendants' actions fall outside the scope of the policy, (3) the policy's exclusion of coverage for unauthorized settlements applies, and (4) Exclusion K applies.

*1. The Past Acts Exclusion*

The Past Acts Exclusion of the 2010 – 2011 Policy does not bar coverage of the Mayfield complaint. The policy excludes coverage for "any Wrongful Act occurring on or subsequent to July 3, 2006[,] which together with a wrongful act occurring prior to such date, would constitute a Related Wrongful Act." (Dk. No. 23-2.) The policy goes on to define a Related Wrongful Act as "Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision." (Dk. No. 23-2.) This Court, as it has in the past, finds this language unambiguous. *See Bryan Bros. Inc. v. Continental Cas. Corp.*, 704 F. Supp. 2d 537, 543 (E.D. Va. 2010) (finding "all acts or omissions in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice, or decision" unambiguous).

The Marsh defendants represented Mayfield in three prior cases before August 2006. To settle any complaint about the representation she received in these prior suits, Mayfield agreed to allow the Marsh defendants to provide legal services to her and her son free for one year. Mayfield accepted the Marsh defendants' offer and asked them to represent her in a defamation

7

action that began in August of 2006, and that gives rise to her malpractice suit against the Marsh defendants.

Other than an ongoing relationship between the Marsh defendants and Mayfield, no common facts connect the defamation action with the prior lawsuits. Admiral believes that the ongoing relationship between Mayfield and the Marsh defendants creates the required factual nexus necessary to show that the defamation action consisted of a related wrongful act. Under Admiral's interpretation of related wrongful act, all attorneys' acts would relate back to the initiation of a relationship with the client. If the Court were to adopt Admiral's interpretation, when attorneys represent longstanding clients, this representation would fall outside professional liability coverage. Here, the Marsh defendants' alleged malpractice consists of entirely different actions than anything they did in handling the prior cases, and Mayfield asserts an entirely different claim against them than anything arising from the prior cases.

Admiral has failed to satisfy its burden and has not shown the clear applicability of the Past Acts Exclusion to the facts alleged in the Mayfield complaint.

*2. The Actions by Marsh Defendants Do Not Fall Outside the Scope of the Policy*

Second, Admiral asserts that no duty to defend exists because the actions of the Marsh defendants, as alleged in the Mayfield complaint, fall outside the scope of the 2010 – 2011 Policy. Admiral provides two reasons why the Marsh defendants' actions fall outside the scope of the policy: (1) Mayfield filed her claim prior to the 2010 – 2011 policy period and (2) the Marsh defendants did not provide a professional service to Mayfield in the defamation action.

*a. The Bar Complaint Is not a Claim Made Prior to 2010 – 2011 Policy Period*

Based on the facts alleged in the Mayfield complaint, the Virginia State Bar found in September and October of 2010 that the Marsh defendants had committed professional

misconduct in relation to their representation of Mayfield. Contrary to the language of its own policy, Admiral argues that the initiation of the bar complaint amounts to making a claim.

The 2010 – 2011 Policy only applies to a claim "first made against the insured during the policy period and reported to the Insurer in writing during the policy period or within 60 days thereafter." (Dk. No. 23-2.) The policy goes on to define a "claim" as "a written demand for Damages or non-monetary relief by reasons of a Wrongful Act, including, but not limited to: (1) a civil, criminal, administrative or arbitration proceeding, or (2) a request that an Insured agree to waive a legal right or sign an agreement to toll the statute of limitations." (Dk. No. 23-2.) The policy then explicitly states that a "Claim *shall not include any proceedings before a state licensing board* or similar authority, except as otherwise provided in section V. Supplemental Coverages of this Policy." (Dk. No. 23-2) (emphasis added). The Supplemental Coverage section provides that the Insurer will pay:

> up to a maximum aggregate limit of $10,000 per Policy Period for all Insureds for reasonable legal fees, costs, and expenses resulting from the Investigation or defense of an Insured in a proceeding before a state licensing board of similar authority arising out of any Wrongful Act by such Insured, but only if such legal fees, costs, or expenses are incurred after notice is first received by the Insured during the Policy Period and reported to the Insurer in writing during the Policy Period. The Deductible shall not apply to this coverage and any payments made hereunder shall not reduce the Limits of Liability stated in Item 3 of the Declarations.

(Dk. No. 23-2.)

Contrary to the express terms of the policy, Admiral would like the Court to find that the definition of a "claim" includes a proceeding before a state licensing board. The Court finds no ambiguity in the meaning of the term "claim." The policy clearly states that a claim does not include any proceedings before a state licensing board. The Supplemental Coverage section of the policy does not make a bar complaint a "claim;" rather, it insures the Marsh defendants

9

against the separate risk of the cost of defending a bar disciplinary proceeding. The Marsh defendants seek coverage not for a state bar proceeding but for a civil proceeding.

When applying the plain meaning of the term "claim" as provided in the policy, nothing in the Mayfield complaint states that Mayfield first made a "claim" against the Marsh defendants outside of the 2010 – 2011 policy period. Thus, the filing of a state bar proceeding complaint prior to 2010 does not preclude the duty to defend.

*b. The Marsh Defendants Provided a "Professional Service"*

Second, Admiral believes that the Marsh defendants' actions fall outside the policy terms because the Marsh defendants did not provide a "professional service" as defined in the policy. According to the policy,

> In all events, coverage is afforded with respect to Professional Services shall only apply for such services performed by an Insured:
> a. for remuneration inuring to the benefit of the Named Insured or Predecessor Firm, or
> b. on a pro bono basis, but solely if, prior to the performance of such services, a partner, director, or officer of the Named Insured or a Predecessor Firm approved the performance of such services without a fee.

(Dk. No. 23-2.)

The policy does not define the term "remuneration." Accordingly, because Admiral left this word undefined, the Court will give the word its ordinary and customary meaning. *See CACI Int'l, Inc.*, 566 F.3d at 158. According to Black's Law Dictionary, remuneration means "1. Payment; compensation. 2. The act of paying or compensating." *Black's Law Dictionary* 1409-10 (9th ed. 2009).

The Mayfield complaint explicitly states that "Mr. Marsh offered to handle any and all litigation against [Mayfield] and/or her son without charge for one year provided [Mayfield] agreed to accept this offer as full *compensation* in exchange for [Mayfield] and her son agreeing

10

not to pursue any right or remedy they might have against [the Marsh defendants]." (Mayfield's Am. Comp. ¶ 10, Dk. No. 23-3) (emphasis added). As noted above, "remuneration" is compensation. Under the Eight Corners Rule, Mayfield clearly provided compensation to the Marsh defendants by agreeing not to pursue a right or remedy against them for alleged past wrongful acts. Accordingly, the Marsh defendants provided a professional legal service to Mayfield.

### 3. Unauthorized Settlement

Third, Admiral believes it does not owe the Marsh defendants a duty to defend because the Marsh defendants entered into an unauthorized settlement. The 2010 – 2011 Policy does not cover any damages or claims expense incurred from the unauthorized settlement. The policy states that:

> An Insured shall not admit liability, enter into any settlement agreement, stipulate to any judgment, agree to arbitration, or incur Claims Expense without the Insurer's prior written consent. The Insurer shall be entitled to full information and all particulars it may request in order to reach a decision regarding such consent. Any Damages and/or Claims Expense incurred and settlements agreed to prior to the Insurer giving its consent shall not be covered hereunder.

(Dk. No. 23-2.) The policy's language is clear and unambiguous.

The Mayfield complaint seeks recovery for the Marsh defendants' handling of the defamation case, not for the earlier settled matters. In essence, Mayfield says the Marsh defendants allegedly injured her in a completely new case. The Mayfield complaint seeks to recover from the Marsh defendants because of alleged malpractice associated with the defamation action—the latest injury. The Mayfield complaint does not seek to recover from any alleged malpractice from actions prior to the defamation case. The alleged "unauthorized settlement" settled possible claims prior to the defamation action. An unauthorized settlement has not taken place for the latest injury—representation in the defamation action. Accordingly,

the language excluding unauthorized settlements does not prohibit the triggering of the duty to defend.

### 4. Exclusion K

Finally, in its Amended Complaint, Admiral alleges that Exclusion K prohibits the triggering of Admiral's duty to defend the Marsh defendants. Exclusion K prohibits coverage for any wrongful act "which has been reported, or in any circumstance of which notice has been given, prior to the Policy Period under any other policy." Dk. No. 23-2. The Marsh defendants have moved for summary judgment on this count asking the Court to declare that Exclusion K does not apply.

Admiral did not move for summary judgment on this count and did not address this exclusion in its response brief. Thus, the Court grants summary judgment to the Marsh defendants as to the applicability of Exclusion K.

## IV. Conclusion

For the reasons provided above, the Court GRANTS in part and DENIES in part Admiral's motion for summary judgment. The Court GRANTS the motion as to Count I, but DENIES the motion as to Counts II, III, and V.

The Court GRANTS the Marsh defendants' motion for summary judgment. The Court DENIES as MOOT the Marsh defendants' motion to stay.

The Court will enter an appropriate order.

Date: June 25, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

12